In the Interest of Kelly STEVENS
(D.O.B. 11/15/86).

Robin REED, Petitioner Below,
Appellant–Cross/Appellee,

and

Charles and Mary Conner, Would be
Intervenors Below, Appellants,

v.

Thomas P. DILLARD, Respondent Below,
Appellee–Cross/Appellant.

Nos. 262, 1993 and 276, 1993.

Supreme Court of Delaware.

Submitted: Sept. 26, 1995.
Decided: Oct. 12, 1995.

Kathryn J. Laffey, Wilmington, for Appellant Robin Reed.

Kevin Gross, Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, for Appellee and Cross Appellant Thomas P. Dillard.

P. Clarkson Collins, Jr. and Barbara D. Crowell, Morris, James, Hitchens & Williams, Wilmington, Guardians ad litem for Kelly Stevens.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT and BERGER, JJ., constituting the Court en Banc.

PER CURIAM.

This matter is before the Court *en Banc* after remand to the Family Court for further proceedings as directed by the Court's decision in *In the Interest of Kelly Stevens,* Del. Supr., 652 A.2d 18 (1995) ("*Stevens I* "). The background and history of this litigation concerning efforts to terminate the parental rights of Thomas P. Dillard ("Dillard") over his biological daughter, Kelly Stevens ("Kelly"), is extensively set forth in our prior opinion. In *Stevens I* we concluded that the Family Court had correctly applied the statutory standards which govern the termination of parental rights under Delaware law, 13 *Del.C.* §§ 1101–1115, on the limited record before it. We further concluded, however, that the Family Court should assess the good faith of Dillard's extensive litigation efforts and his apparent failure to pursue the opportunity for visitation rights.

## I

Pursuant to our order of remand, the Family Court received twenty-four hours of testimony, including extensive psychological evidence, concerning Dillard's parental capability and his effort to establish a genuine parental relationship with his daughter. In a report to this Court, the Family Court made extensive factual findings and conclusions of law. It determined that: (i) following the termination of the Pennsylvania litigation in 1991 Dillard delayed making any significant effort to establish visitation privilege with his daughter and that the visitation petition instituted by him was in response to renewed efforts in Delaware to terminate his parental rights; (ii) during the period when the previous termination proceeding was pending in the Family Court, Dillard refused to communicate with the social agency designated by the Family Court to evaluate his parental fitness; (iii) following the initial denial of the termination petition, Dillard did not follow the Family Court's direction to prepare a plan for introducing himself into Kelly's life and, in fact, failed to appear at a October 18, 1993 hearing on visitation rights scheduled in the Family Court; (iv) Dillard has engaged in extraneous federal litigation and other activities in order to delay the progress of the State proceedings and expose Kelly to publicity inconsistent with the confidential nature of the termination/visitation process; (v) Dillard has declined opportunities to discuss his plans for contact with Kelly with Kelly's Court Appointed Special Advocate despite repeated efforts to contact him; and (vi) Dillard's psychological profile suggests a distorted sense of parenthood with emphasis on parental rights, to the point of excessive litigation and to the detriment of a real parent/child relationship.

After determining that Dillard by his conduct after April 26, 1993 had not initiated any substantial contact with his daughter through the processes available to him, the Family Court concluded that Dillard's "conduct and behavior unequivocally shows clearly and convincingly that [he] abandoned any interest in being the loving and caring father to Kelly Stevens." Having determined that a statutory ground for termination had been established, the Family Court proceeded to determine the "best interests" aspect of the termination process and concluded that the overwhelming weight of evidence supports a finding that Kelly has established a supportive and loving attachment with the individuals who have cared for her since birth. The termination petition was granted to enable Kelly's adoption "by the only persons she has ever known as parents."

## II

■ Our review of the grant or denial of a termination petition where the Family Court has conducted an evidentiary hearing is restricted to a review of factual findings to assure that they are logical and supported by the record. We must also be satisfied that the trial court has properly applied the pertinent law. *Stevens I,* 652 A.2d at 23.

In the present appeal, Dillard asserts that in the proceedings on remand the Family Court denied him procedural fairness. First, he contends that the psychologist appointed by the Family Court to act as an independent expert was compromised in her independence by exposure to information supplied by opposing counsel. In her testimony, however, the expert made it clear that her evaluation was based on objective testing and her own

analysis. She specifically denied that she had been influenced by material received from counsel.

■ We also find no substance in Dillard's claim that he was denied access to Kelly in preparing for the hearing on remand. Dillard's request of the Family Court was for an "examination of Kelly" and production of her medical and school records. The Family Court's decision not to require a face-to-face meeting between Dillard and an eight year old daughter he had never spoken to, and who was unaware of the termination proceeding, was a matter within the discretion of the Family Court. Given the sensitivity of the proceedings and the possible psychological harm to the child which might result from such a confrontation, we find no basis to disturb that ruling. The Family Court did grant Dillard's request for production of medical and school records as well as Kelly's record on file with the Division of Family Services. In our view, this ruling provided sufficient discovery into Kelly's background and did not deny Dillard access to information needed to present his case in the Family Court.

■ Dillard's final claim of procedural deficiency is that the Family Court on remand, applied the "best interests" prong of the termination test before determining whether Dillard had abandoned Kelly. It is contended that the approach was contrary to this Court's direction on remand. We do not read the Family Court's report to this Court as contrary to our remand order. Indeed, in its report the Family Court did not discuss the best interests aspect until it had first determined that abandonment, within the meaning of 13 *Del.C.* § 1101(1), had occurred. The fact that the trial court may have permitted the parties to present evidence at its various hearings on the best interests question before it received all evidence tendered on the abandonment issue is not improper. The manner in which evidence is presented in a trial in which the judge is both finder of fact and definer of the law is clearly discretionary. We find no abuse of that discretion.

■ We also reject Dillard's claim that the Family Court's findings are neither sup-

ported by substantial evidence nor logically consistent. On remand the Family Court was charged with re-examining Dillard's "good faith and subjective intent" in light of his conduct in not pursuing the visitation opportunities made available to him by the Family Court. *Stevens I* at 28. Dillard's motivation and any psychological basis for his unusual approach to parenthood were also subject to analysis by the Family Court on remand.

The Family Court's finding that Dillard's efforts at genuine parental contact with his daughter were "superficial at best" and that he lacked any *bona fide* interest in establishing a genuine parental relationship are fully supported by the record. There is substantial evidence that Dillard, by his intensive litigation efforts, to the detriment of attempting to cultivate a genuine parental interest, demonstrated abandonment within the meaning of 13 *Del.C.* § 1101(1). Finally, there is little dispute that the record supports the conclusion that Kelly's best interests are served by placement with, and adoption by, the only persons she has ever known as parents. Accordingly, we affirm the judgment of the Family Court.

We would be remiss if we did not again recognize the advocacy of P. Clarkson Collins, Jr., Esquire and Barbara D. Crowell, Esquire who participated in these proceedings as court appointed Guardians *ad litem* for Kelly Stevens and Kevin Gross, Esquire who was appointed by this Court to represent Dillard in this Court and on remand in the Family Court. The high level of advocacy and professionalism demonstrated by them in this difficult, unusual, and demanding case, rendered *pro bono publico,* is in the best tradition of the Delaware Bar.